Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| JORANNIE CRUZ NIEVES<br><br>Recurrida<br><br>v.<br><br>PEDRO J. NEVÁREZ BRUNO<br><br>Peticionario | KLCE202500548 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de SAN JUAN<br><br>Caso Núm.:<br>K CU2025-0004<br><br>Sobre:<br>Custodia |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente.

## **RESOLUCIÓN**

En San Juan, Puerto Rico, a 18 de junio de 2025.

El 21 de mayo de 2025, el Sr. Pedro J. Nevárez Bruno (en adelante, señor Nevárez o el peticionario), padre del menor GJNC, compareció ante este Tribunal de Apelaciones mediante una *Petición de Certiorari* en la que nos solicita la revisión de una *Orden* emitida en el caso de epígrafe por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI o foro primario) con fecha del 27 de marzo de 2025 y notificada al día siguiente. Mediante el referido dictamen, el TPI declaró No Ha Lugar la *Moción de Desacato*, la *Urgente Moción para que se Atiendan Asuntos Relevantes Previo al Efecto de Paralización por Vacaciones Solicitado por la Abogada de la Demandante* y la solicitud para que se cambiara a la Dra. Astrid Gandarilla como psicóloga del menor GJNC.

Evaluado el legajo apelativo, al amparo del derecho aplicable que más adelante consignamos, resolvemos **denegar** la expedición del auto de *certiorari* solicitado.

Número Identificador

RES2025 _____

I.

El presente caso comenzó con la presentación de una solicitud sobre custodia presentada por la Sra. Jorannie Cruz Nieves (en adelante, señora Cruz o recurrida) madre del menor GJNC ante el Tribunal de Primera Instancia, Sala Superior de Bayamón. Atendido el recurso, tras los trámites de rigor, el 18 de agosto de 2018, el tribunal emitió *Sentencia.* Allí, resolvió que la custodia del hijo menor de las partes sería ejercida por la recurrida. Igualmente, estableció que las relaciones paternofiliales se efectuarían en un contexto terapéutico hasta tanto el terapeuta determinara que el menor estaba apto para un plan de relaciones paternofiliales distinto. En tal dictamen, entre otras cosas, el tribunal también estableció que las partes debían notificarse sobre todos los asuntos relacionados a la salud física, hospitalizaciones, tratamientos o intervenciones médicas, así como aspectos escolares del menor, entre otros. Asimismo, en la *Sentencia* se le ordenó a las partes a continuar participando de terapia familiar con el Dr. Luis Díaz a través de MINDS, quien establecería las relaciones paterno-filiales. De igual forma, se estableció que, en caso de que la madre custodia tenga una emergencia, el padre será quien cuide del menor, siendo este la primera opción en estas circunstancias para el recogido, cuidado y transporte de este; y se ordenó matricular al menor en la escuela Cupeyville.

El 27 de enero del año en curso, la señora Cruz solicitó el traslado del caso a la Región Judicial de San Juan, pues el menor y ella ahora residían en tal región. Pendiente de atenderse el traslado, el 30 de enero de 2025, el señor Nevárez presentó una *Moción Informativa y en Urgente Solicitud de Orden*. En síntesis, allí informó que, la recurrida solicitó una orden de protección en su contra y que, durante dicho proceso, la Dra. Astrid Gandarilla, terapista del hijo de las partes, se presentó como testigo de la señora Cruz. Añadió que, no era la primera vez que la Doctora Gandarilla se alineaba con la recurrida en su contra. De otra parte, en su escrito el señor

Nevárez relató que el menor estaba presentando problemas conductuales y de agresión física en la escuela que demostraban la inefectividad en el proceso terapéutico por parte de la Doctora Gandarilla, el cual señaló se había tornado inefectivo y contraproducente. El peticionario reclamó que el juicio de la Doctora Gandarilla estaba sesgado y parcializado y que esto afectaba el bienestar del menor. En virtud de lo anterior, solicitó el cese de toda intervención terapéutica por parte de la Doctora Gandarilla, así como el cambio de la psicóloga.[1] El 20 de febrero de 2025, el caso fue trasladado a la Sala Superior de San Juan.

Así las cosas, el 13 de marzo de 2025, el peticionario presentó una *Moción de Desacato*. En esta, indicó que el 12 de septiembre de 2024, en el caso se emitió una *Resolución* en la que el tribunal sostuvo que el padre no custodio era la primera opción de cuido cuando la madre custodia no pudiera hacerlo por razón de trabajo, viaje o enfermedad. Afirmó que la recurrida no estaba dando fiel cumplimiento a ello, negándole la oportunidad de ser la primera opción de cuido, por lo que solicitó se le encontrara en desacato.

Ese día, el señor Nevárez también presentó una *Urgente y Reiterada Solicitud de Orden, Notificando Incumplimiento de Orden de la Demandante* en la cual reprodujo sus preocupaciones en cuanto a los problemas de conducta y emocionales del menor, los que indicó han ido *in crescendo* hasta el punto de que este fue suspendido de la escuela. Por esta situación, insistió que el proceso terapéutico e intervenciones de la Doctora Gandarilla eran inefectivas y contraproducentes.

El 21 de marzo de 2025, la señora Cruz presentó *Oposición a Moción Informativa y Urgente Solicitud de Orden* en la que, entre otras cosas, manifestó su oposición a la solicitud de orden para que se le asigne un

---

[1] El 10 de febrero de 2025, la Sala Superior de Bayamón concedió 20 días la señora Cruz para expresarse en cuanto a este escrito.

nuevo psicólogo a su hijo. En cuanto a esto, destacó que no era la primera ocasión durante el trámite del pleito que el peticionario levantaba imputaciones éticas en contra de la Doctora Gandarilla con el propósito de removerla como terapista de menor. Detalló pues, las distintas ocasiones en el tracto procesal del caso en las que el señor Nevárez levantó alguna imputación en contra de la psicóloga; así como las circunstancias que el propio expediente revelaba rodearon cada una de tales ocasiones. Así pues, y por las razones allí dadas, la recurrida catalogó de frívolo, dañino al menor y egoísta la petición del señor Nevárez, por lo que pidió que la misma le fuera denegada.

El 27 de marzo de 2025, el TPI emitió *Orden* en la cual declaró No Ha Lugar la *Moción de Desacato* y la *Urgente y Reiterada Solicitud de Orden, Notificando Incumplimiento de Orden de la Demandante* que el peticionario sometió en el caso. Específicamente, denegó la solicitud para que se cambie la psicóloga que trata al hijo menor de las partes, así como la solicitud de nuevo referido a la Unidad Social. En la misma fecha, el TPI emitió *Sentencia* en la cual, hizo constar que en el caso se había dictado *Sentencia* el 28 de agosto de 2018, por lo que ordenó el archivo del caso para fines estadísticos.

Inconforme, el 4 de abril de 2025, el señor Nevárez presentó *Urgente Reconsideración de Orden y Urgente Solicitud de Orden Ante la Emergencia de Problemas Conductuales Serios del Menor que ha sido Expulsado del Colegio* en la cual aceptó que en el caso se había dictado una *Sentencia.* No obstante, señaló que luego de este dictamen, así de como otros emitidos posteriormente, han surgido problemas serios de conducta con el menor que son la causa real de su pedido. Negó que las razones dadas por la recurrida en su oposición fueran las razones por las que acudía en auxilio del tribunal. En contrario, adujo que el agravio de los problemas conductuales y emocionales del menor que han ido agravándose en los últimos meses era el motivo por el que acudió al tribunal para solicitar se

cambiara la psicóloga que lo atendía. Ello, y el hecho de que la confianza de él para con la Doctora Gandarilla quedó lacerada, puesto que durante el tratamiento se le ocultó información importante relacionada con la salud de su hijo.[2]

El 11 de abril de 2025, la recurrida se opuso a la reconsideración del señor Nevárez. En síntesis, indicó que era lamentable que el peticionario utilizara la expulsión del menor de la escuela con el propósito de solicitar un nuevo decreto de custodia. Enfatizó que, de dicho decreto surgía que este era irresponsable respecto a los diagnósticos y tratamientos de su hijo. Específicamente, señaló que el menor GJNC tenía un diagnóstico de trastorno oposicional desafiante y que estaba comenzando a experimentar la pubertad, lo que afectaba su conducta. Apuntó que, desde el momento en que el menor comenzó a relacionarse con su padre en enero de 2025, empeoraron sus problemas conductuales. De igual forma, adujo que el 30 de agosto de 2024 y el 8 de octubre de 2024, la Dra. Gandarilla se reunió con el personal de la escuela del menor para trabajar los problemas conductuales de este. Finalmente, reiteró que el Tribunal no podía cambiar sus determinaciones y ordenar el cambio de la psicóloga, por el hecho de que sus recomendaciones no beneficiaban al peticionario.

En esa fecha, por su parte, el señor Nevárez presentó una *Urgente Moción para que se Atiendan Asuntos Relevantes Previo al Efecto de Paralización por Vacaciones Solicitado por la Abogada de la Demandante*. En esencia, manifestó que debido a la flexibilidad que tiene en su horario de trabajo, se ofreció a estudiar con su hijo. Indicó que la recurrida aceptó este ofrecimiento, sin embargo, entorpeció el proceso al asumir una actitud controladora que demostraba su intención de extinguir la figura paterna, no proveer los materiales para estudio, e inclusive negarse a entregarle los

---

[2] Ese día, el señor Nevárez presentó una *Urgente Moción de Orden* en la cual reiteró el referido a la Unidad Social.

medicamentos del menor. El peticionario, indicó que la señora Cruz contrató los servicios de una persona para que estudiara con el menor en el hogar, la que no conocía y cuya contratación no le fue consultada. Similar falta de consulta le atribuyó a esta en cuanto a una nueva escuela en la que su hijo le indicó le matricularían. Por todo lo que consignó en su escrito, el señor Nevárez razonó que las actuaciones de la recurrida violentaban su derecho a ejercer la patria potestad. Debido a ello, solicitó que se ordenara a la madre del menor a consultar las decisiones de su hijo, así como que el menor fuera evaluado por otros psiquiatras y psicólogos del Tribunal para que evalúen la conducta de Gustavo y la pobre o ninguna ayuda que ofrece la Doctora Gandarilla.

El 22 de abril de 2025, el foro primario declaró No Ha Lugar la reconsideración y solicitud urgente de orden del señor Nevárez. Inconforme aun, el 21 de mayo de 2025, acudió ante nos a través del recurso de epígrafe, en el que señaló la comisión de los siguientes errores:

> El TPI incurrió en error manifiesto, error en derecho y abusó de su discreción al declarar no ha lugar la reconsideración presentada que exigía atender asuntos de suma relevancia relacionados con el mejor bienestar del menor que habían sido ordenados desde el 2 de abril de 2024 por el TPI sala de Bayamón, magistrados de la misma jerarquía.

> Erró en derecho el TPI y cometió abuso de discreción al reiterar la determinación de que el menor continúe recibiendo tratamiento psicológico con la Dra. Astrid Gandarilla y el Dr. De La Luz, a pesar de que el mismo no ha sido eficaz, pues el menor ha empeorado sustancialmente y en cuanto a la psicóloga Gandarilla, no existe confianza, ni comunicación alguna con el padre quien ostenta patria potestad compartida.

> Erró en derecho el TPI y cometió abuso de discreción al permitir y avalar las violaciones al derecho de patria potestad del peticionario y al descartar sus reclamaciones sin conceder tan siquiera la celebración de una vista lo cual violentó su debido proceso de ley.

Atendido el recurso, el 27 de mayo de 2025, emitimos *Resolución* ordenándole a la recurrida a comparecer en diez (10) días y someter su posición. En cumplimiento con lo anterior, el 9 de junio de 2025, esta presentó *Moción de Desestimación por Ausencia de Jurisdicción y Alegato en Oposición*.

En cuanto al reclamo de ausencia de jurisdicción, la señora Cruz planteó que estamos impedidos de atender los primeros dos señalamientos de error, pues el asunto sobre el que estos tratan advino final y firme. Ello así, ya que este nunca solicitó reconsideración de la negativa del foro primario a referir el asunto a la Unidad Social y, por consiguiente, el término para recurrir de dicha determinación nunca se interrumpió. De igual forma, la señora Cruz reclama que el asunto sobre el cambio de la Dra. Gandarilla como psicóloga del menor GJNC era cosa juzgada, ya que la *Resolución* en cuanto a esto advino final y firme el 12 de octubre de 2024.

Así, con el beneficio de la comparecencia de todas las partes, procedemos a resolver la controversia.

II.

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. Rivera et al. v. Arcos Dorados et al., 212 DPR 194, 195 (2023) al citar a McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021) y otros. La característica distintiva del recurso de certiorari descansa en la discreción encomendada a este Tribunal de Apelaciones para autorizar su expedición y adjudicar sus méritos. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". BPPR v. SLG Gómez-López, 213 DPR 314 (2023) y casos allí citados. Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd.*

Ahora bien, en los procesos civiles, los preceptos que regulan la expedición de un auto de *certiorari* se encuentran en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. Rivera et al. v. Arcos Dorados et al., *supra,* a la pág. 207-208. La mencionada Regla dispone que solo se

expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." Asimismo, y a manera de excepción, se podrá expedir este auto discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia." *Íd.*

El examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. 800 Ponce de León v. AIG, 205 DPR 163 (2020).  Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

Los criterios previamente transcritos pautan el ejercicio sabio y prudente de la facultad discrecional judicial. Mun. de Caguas v. JRO Construction, 201 DPR 703, 712 (2019).  La delimitación que imponen estas

disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación." Scotiabank v. ZAF Corp. et al., *supra*, págs. 486-487; Mun. De Caguas v. JRO Construction, *supra*.

III.

A través de la discusión conjunta de los errores que señaló, el peticionario reclama que el foro primario erró en derecho y abusó de su discreción al denegar sus reclamos en busca del mejor bienestar de su hijo menor. Específicamente, expone que falló el foro primario al despachar livianamente las alegaciones levantadas por él en cuanto a los problemas serios conductuales que el menor refleja. Igual falta de profundidad le atribuyó al análisis efectuado por el TPI frente a los reclamos de enajenación parental que ha señalado por parte de la recurrida, quien eliminó el apellido paterno de la ropa deportiva de su hijo identificándole en su lugar con el apellido materno, insiste en ignorar el mandato judicial para que sea él la primera opción de cuido del menor, cuando la madre custodia no pueda e inclusive no consulta con él decisiones que le competen a ambos por ser propias de la patria potestad que ostentan sobre su hijo.

A su vez, argumenta que el TPI incidió al reiterar la determinación de que el menor continúe bajo tratamiento psicológico con la Dra. Astrid Gandarilla a pesar de que el mismo no ha sido eficaz, pues "[no] ha observado avance alguno de su hijo, sino, todo lo contrario pues durante más de 3 largos años, la salud emocional y psiquiátrica del menor ha ido en decadencia de forma desmedida." De igual forma, expone que no confía en la Doctora Gandarilla y el tratamiento que le brinda al menor, cuya conducta alega ha empeorado a tal grado que inclusive, fue expulsado de la escuela.[3] Por todo lo que expone en su escrito, el peticionario también

---

[3] El señor Nevárez explica que esta desconfianza la causó la comparecencia de la Doctora Gandarilla como testigo de la madre en una vista sobre orden de protección, las actitudes de esta para con su persona y la parcialidad que hay de parte de esta por los lazos de

plantea que el foro primario erró al permitir y avalar las violaciones al derecho de patria potestad al descartar sus reclamos sin siquiera conceder la celebración de una vista.

La recurrida, por su parte, alega que este Tribunal de Apelaciones carece de jurisdicción para atender los errores señalados por el peticionario. En apoyo a su argumento, expone que la presentación del recurso de epígrafe trae a nuestra atención argumentos sobre el referido a la unidad social que fue dejado sin efecto mediante determinación judicial hoy final, firme e inapelable. Similar finalidad señala en cuanto a los planteamientos traídos por el recurrido en cuanto a su solicitud para eliminar a la psicóloga del menor. De acuerdo a la recurrida, este asunto fue adjudicado en la Resolución que el TPI dictó en el caso el 12 de septiembre de 2024. Finalmente, esboza su representante legal nunca solicitó la paralización de los procedimientos por sus vacaciones, sino que informó con antelación a la otra parte y al juez sus vacaciones pautadas para el verano.

Toda vez que la recurrida alega que carecemos de jurisdicción para atender al menos dos de los errores planteados, estamos obligados a atender ese asunto en primera instancia. Esto así, pues de coincidir con su apreciación, estaríamos impedidos de evaluarlos. Así pues, y con el fin de atender su reclamo de falta de jurisdicción, hemos evaluado con detenimiento los documentos que conforman el legajo apelativo. Efectuado este ejercicio, declaramos **No Ha Lugar** la solicitud de desestimación de la recurrida.

Aunque en la redacción del primer señalamiento de error se hace mención del referido a la Unidad Social, una lectura de la discusión conjunta de los errores nos deja ver que allí no se discute dicho asunto. Al contrario, de la sinopsis que arriba hicimos, surge que el enfoque de la

---

cercanía que ha desarrollado con la madre custodia. Todo esto, añadido a la poca mejora, si alguna, que observa en su hijo con el tratamiento que se le ha brindado por años.

discusión del peticionario se centró en exponer su desconfianza en la efectividad del tratamiento que el menor ha recibido por los pasados años de la psicóloga y las circunstancias relativas a la conducta del menor que lo han llevado a alcanzar esta conclusión. También, su enfoque se dirigió a establecer las razones por las que a su entender quedó demostrada la parcialidad que le atribuye a la Doctora Gandarilla en favor de la madre custodia y las acciones de la psicóloga que lo han convencido de que esta lo menosprecia como progenitor e inclusive auspicia la enajenación parental que reclama existe en el caso.[4]

De otra parte, si bien es cierto que, en la *Resolución* del 12 de septiembre de 2024, se atendieron unos asuntos, una lectura de tal dictamen no refleja que, tal como la recurrida alega, allí se hubiera resuelto en definitiva la controversia particular incluida en el segundo señalamiento de error. Al contrario, advertimos que por eventos que ocurrieron con posterioridad a la mencionada resolución el peticionario acudió al foro primario sobre este tema. Estos asuntos particulares, notamos, sí fueron atendidos mediante la *Resolución* del 27 de marzo de 2025. Por tanto, el señor Nevárez recurrió oportunamente ante nos sobre el particular.

Así resuelto, nos corresponde evaluar si el TPI cometió alguno de los errores señalados por el peticionario. Tras un minucioso estudio de los documentos del Apéndice y los argumentos levantados por ambas partes, no identificamos presente alguno de los factores que la Regla 40 de nuestro Reglamento enuncia para determinar la expedición del auto discrecional del *certiorari*. No encontramos que la decisión recurrida sea contraria a derecho, ni que en esta haya mediado prejuicio, parcialidad o error craso por parte del TPI.

---

[4] Nótese además, que en la *Orden* que el foro primario emitió el 27 de marzo de 2025, al atender la *Oposición a Moción Informativa y Urgente Solicitud de Orden* el TPI resolvió, "No Ha Lugar a la solicitud de nuevo referido a la Unidad Social". Por consiguiente, sí hay una determinación judicial reciente que atiende el asunto particular que la recurrida alega es académico.

Nos parece que el foro primario- contrario a lo aludido por el peticionario- efectuó un estudio concienzudo del expediente y un análisis objetivo y cuidadoso de las circunstancias particulares del caso, de cada imputación que cada una de las partes ha hecho contra la otra, así como de las determinaciones emitidas previamente por el foro que antes atendía el caso. A nuestro juicio, la negativa del TPI a conceder lo solicitado por el peticionario demuestra que, luego de su avalúo, el foro primario no quedó convencido de que descontinuar el tratamiento que ha recibido el hijo de las partes fuera en el mejor bienestar del menor. Tampoco fue persuadido de que la psicóloga padeciera de la parcialidad imputada, ni de que el caso ameritaba un cambio del estado de derecho establecido el año pasado por el TPI, Sala Superior de Bayamón. [5]

Como dijimos, nos parece que esta decisión no fue propiciada por prejuicio, parcialidad, ni error craso por parte del TPI y por tal razón, denegamos expedir el auto de *certiorari*.

IV.

Por los fundamentos arriba expuestos, denegamos expedir el auto de *certiorari*. Igualmente, declaramos no ha lugar la *Moción de Desestimación por Ausencia de Jurisdicción y Alegato en Oposición* presentada el 9 de junio de 2025.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[5] Reconocemos que la denegatoria de un auto de *certiorari*, no equivale a una adjudicación en los méritos de las controversias planteadas. Mucho menos, establece la ley del caso. Por consiguiente, cualquier expresión efectuada por este Tribunal de Apelaciones no tiene efecto jurídico por haberse denegado. Habiéndose echo esta salvedad, no queremos concluir sin señalar que más allá de que en la determinación recurrida no hubo prejuicio, pasión, parcialidad ni error craso, **la decisión de reafirmar que el menor continúe recibiendo tratamiento de la Doctora Gandarilla nos parece fue dirigida precisamente a procurar su mejor bienestar.** El legajo apelativo no releva evidencia alguna, que demuestre parcialidad por parte de la Doctora Gandarilla. Más allá de meras alegaciones en contra de la psicóloga, nada hay que respalde sus planteamientos.